1

2   PATERSON UBARIEKE

3   4336 OREGON ST.#4

    SAN DIEGO, CA.92104

4   PHONE: 619-519-0937

5

FILED

2010 FEB 10 PM 2:48

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

6

·7

8

9

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

10

11   PATERSON UBARIEKE,

              Plaintiff,

12        vs.

13   1.WAL- MART STORES INC.,

14   2.ARTHUR GLADUE JR.(STORE

15   MANAGER)

16   3.KIMBERLY PEPPARD(Asst. Manager)

17   4.CHARLES HALPER(Asst. Manager)

18   5.VENSON PUGH,(Sup. Manager)

19   AND DOES, 1-20, INCLUSIVE

              Defendants

20

21

22

23

24

25

26

27

28

Case No. 10 CV 0329      W   NLS

TITLE VII OF THE CIVIL RIGHTS ACT

OF 1964 §§ 2000e- et seq.;

FAIR EMPLOYMENT AND HOUSING

ACT 1980, GOVT.C. §12490 et seq.;

FAILURE TO PREVENT HARASSMENT,

DISCRIMINATION OR RETALIATION

GOVT.C.§12940 (K);

42 U.S.C.A §1981;

BREACH OF CONTRACT;

FALSE IMPRISONMENT AND

INTENTIONAL INFLICTION OF

EMOTIONAL DISTRESS

Date:

Dept.:

Judge:

"DEMANDS JURY TRIAL"

Employment

- 1

## BACKGROUND FACTS:

I, Paterson Ubarieke state that I am the plaintiff in this case. I am black, male, African and a sales floor associate at the Wal-Mart Store in Poway California. I have worked at the store for four years.

Over those years I had been subjected to and continue to be the target of discriminatory actions and harassment from past and present members of management, the within named defendants inclusive.

My repeated calls to upper management to internally remedy the situation have been ignored and rather had attracted retaliatory actions against me. Wherefore, I now allege as follows:

1.      That I am the within named plaintiff, a resident of San Diego, California within the jurisdiction of this court.

2.      That Wal-Mart Stores Inc., (hereafter, "Wal-Mart") the 1st defendant in this suit, is a registered corporation and operates retail stores with business interests spanning the entire United States of America and employs the within named 2nd, 3rd 4th and 5th defendants in managerial positions at its Poway store.

3.      That Arthur Gladue Jr., Kimberly Peppard, and Charles Halper (2nd, 3rd, and 4th defendants respectively) are agents and salaried members of management, and Venson Pugh the 5th defendant is an agent and hourly support manager of Wal-Mart at the store located at 13425 Community Road, Poway, CA. 92064.

4.      That I am yet to ascertain the names, capacities and roles of the defendants herein sued as 'DOES' 1-20 inclusive, and therefore sue these defendants by such fictitious name.

5.      That I will duly amend this complaint, at the time the names, capacities and roles of the defendants now sued as 'DOES' 1through 20 is ascertained, to reflect their true identities, capacities and roles.

6.      That I know that the within named defendants and each and every of the fictitiously named defendants either singly, or jointly, and severally are the cause(s) either directly or indirectly of the damages suffered by me.

7.      That I filed charges against Wal-Mart with the Equal Opportunity Employment Commission (EEOC) and I was issued a 'right to sue' notice.

8.   That in exercise of that right, I filed this suit and allege as follows:

## CAUSES OF ACTION

9.   1. **TITLE VII CIVIL RIGHTS ACT OF 1964, SECTION 2000e et. seq.
AND CAL. GOVT. CODE SECTION 12940 et seq.**

10.   A.   **DISCRIMINATION**

11.   I.   **WAL-MART**

12.   Plaintiff hereby incorporates by reference paragraphs 1 through 8 above inclusive as though fully set forth herein.

13.   That I am a black, male, African.

14.   That I was qualified and applied for the associate position in the electronics department of the Poway Wal-Mart Store. At the time I was hired I had better qualification and experience than other applicants, who were hired on or at about the same time to perform essentially the same job functions, under the same condition. However, I later discovered that less qualified applicants were offered higher starting compensation package compared to what I was offered.

15.   That I believe I was discriminated against because of my race, national origin, color, and sex.

16.   That I suffered harm because of the actions of Wal-Mart and its agents.

17.   That Wal-Mart's discriminatory employment practices was substantially the reason for the harm I suffered.

18.   i.   **JOHN FOESTER**

19.   That John Foester, (hereafter, "Foester") white male was an agent and, at the relevant time, former store manager of the Wal-Mart's store in Poway, demoted me from the electronics department to the hardware department under discriminatory circumstances. I believe that my demotion, the consequential pay cut, Foester's refusal to afford me fair hearing was because of my race, national origin, color and sex.

20.     Furthermore, that Foester's intention was to limit and or foreclose any advancement opportunities that I may at anytime pursue with Wal-Mart. I suffered harm in consequence of Wal-Mart's discriminatory employment practices by its herein named agent and the actions of the agent was substantially the reason for the harm I suffered.

21.     ii.  <u>MARK STOEKL</u>

22.     That Mark Stoekl (hereafter, "stoekl") Asst. Manager white male and, at the relevant time, agent of Wal-Mart was aware of my demotion and consequential pay cut. However, against my protests, to further humiliate, embarrass and subject me to mental anguish on several occasions Stoekl forced me to work at the electronics department.

23.     I believe that Stoekl forced me to work at the electronics dept. inspite of his knowledge of my demotion and consequential pay cut was because of my race, national origin and color. I suffered harm and Stoekl's actions was substantially the reason for the harm I have suffered.

24.     iv.  <u>CHARLES HALPER</u>

25.     That on March 14, 2009 Asst. Manager Charles Halper (hereafter, "Halper") white, male, the 4th defendant and an agent of Wal-Mart called me racially offensive name and I was offended by the offensive racial name.

26.     That the next day Halper called me to the Managers' office. Asst. Manager. William Moore was present. I was subsequently disciplined. I have been harmed and Halper's offensive name calling is substantially the reason for the harm I suffer.

27.     That Wal-Mart, and through its within named agents, treat other similarly situated employees more favorable in terms, compensation, condition(s) and privileges of employment than it accords me and I believe that I had been and being so treated because of my race, national origin or color.

28.     That I suffered harm because of Wal-Mart's discriminatory employment practices and the actions and conducts of the within named Wal-Mart agents.

29.     That Wal-Mart's discriminatory employment practices and the actions and conducts of the named Wal-Mart agents are substantially the reasons for the harm I suffered.

30.     B.  **RETALIATION**

31.     Plaintiff hereby incorporates by reference paragraphs 1 through 32 above inclusive as though fully set forth herein.

32. v. <u>KIMBERLY PEPPARD</u>

33. That on June 5, 2009 I opposed the discriminatory actions of Michael Macumber ( hereafter, "macumber")(Asst. Manager) and Venson Pugh, (hereafter, "Pugh") the 5th defendant and Wal-Mart's agents, and I made my opposition and complaint known to Peppard who had knowledge of my charges of discrimination against Poway Wal-Mart Management. On June 13, 2009 a week after my complaint to her, she and Pugh escorted me to the managers' office and maliciously disciplined me because of my opposition to discriminatory practices.

34. That I believe that the aforesaid discipline was retaliatory because of my complaint, opposition to and charge(s) of discriminatory practices against Wal-Mart and its agents.

35. That because of discriminatory practices at the Poway Wal-Mart store I filed a law suit against defendants at the San Diego Superior Court on June 19, 2009 and the within named parties were duly served with notices of this suit on June 20, 2009. Because I filed a complaint against the discriminatory practices of the within named Wal- Mart agents, on June 25, 2009, on getting to work, I was subjected to retaliatory actions by Peppard and Halper and Arthur Gladue Jr. (hereafter, "Gladue") (Store Manager) the 2nd defendant and agent of Wal-Mart because I filed a complaint of discrimination against Wal-Mart and it agents named herein. They escorted me into the managers' office and without my consent locked and detained me at the managers' office for about three hours and subjected me to continuous interrogation, threats, harassment, psychological torture and unbearably pressured me to confess to a crime and acknowledge same by signing a document, to that effect[1], authored by Peppard.

36. That I believe I was subjected to the foregoing retaliatory actions by Peppard, Halper and Gladue because I filed a complaint against, and for my opposition to the discriminatory actions and conducts of the within named defendants and the retaliatory actions and conducts was likely to discourage other associates from engaging in similar or protected activity.

37. That upon my release I became ill and on the advice of a medical doctor I was placed off work for several days.

---

[1] The document is vital evidence to this suit signing or acknowledging its content would absolve defendants and expose me to sanctions including but not limited to criminal prosecution.

Employment

- 5 -

38.    vi.  <u>CHARLES HALPER</u>

39.    Plaintiff hereby incorporates by reference paragraphs 35 through 37 above inclusive as though fully set forth herein.

40.    Plaintiff further alleges that on March 14, 2009 Halper called me racially offensive name and I was offended thereby. At my interrogation following the name calling I stated my opposition to Halper's derogatory racial name calling.

41.    That the next day Halper called me to the Managers' office. Asst. Manager. William Moore was present. While there I again stated my opposition to Halper's derogatory racial name calling. However, rather than address my complaint I was severally questioned about the sources of my information and whether or not I declined Halper's order to abandon my customers. Nothing was said, about Halper's name-calling the previous night that I found offensive and opposed or of his threats to me that I had complained of. I was subsequently disciplined.

42.    vii.  <u>ARTHUR GLADUE JR.</u>

43.    Plaintiff hereby incorporates paragraphs 35 through 37 above inclusive as though fully set forth herein.

44.    ix.  <u>Venson Pugh</u>

45.    That Pugh (one of the managers whose discriminatory actions I opposed on June 5, 2009) and Peppard on June 13, 2009 escorted me to the manager's office and informed me that I had been insubordinate to them on June 5, 2009 by opposing and complaining of Pugh and Macumber's discriminatory actions.

46.    That Pugh insisted that I must be disciplined for opposing his and Macumber's discriminatory actions of June 5, 2009. Because I opposed the discriminatory actions and conducts of Pugh and Macumber I was disciplined and recommended for termination.

47.    That suffered harm as a result of the retaliatory actions and conducts of the named
       defendants.

48.    C.  <u>**Harassment**</u>

49.    That plaintiff incorporates by reference paragraphs 1 through <u>47</u> above inclusive as though fully set forth herein.

/////

50. x. <u>MARK STOEKL</u>

51. That Stoekl without reasonable cause instructed some associates to keep an "eye on me" and I was reliably informed by some of the associates that he so instructed them.

52. That in December 2007 I confronted Stoekl with the allegations of his unwelcomed directive to associates to be monitoring me within the store. However, as of the time of filing this suit he has yet to deny the allegations. I was the only associate singled out by Stoekl to be so monitored. I believe that the reason Mark singled me out for unwelcomed monitoring by fellow associates was because of my race, color, national origin and ancestry.

53. xi. <u>ARTHUR GLADUE JR.</u>

54. That Gladue in his position and capacity as store manager wields enormous influence and control throughout the store.

55. That since Gladue assumed the leadership of the Poway Wal-Mart store racial epithets and stereotypes has become increasingly typical.

56. That Gladue had at different times and on different occasions demonstrated unwanted and inexcusable animus against me. On one such occasion I requested an "open door" from him over a minor personnel issue, he ignored my request. However, when the same issue was brought to his attention by another associate he summoned me to the personnel office.

57. That sometimes in or around April 2007 few days after the incident at the personnel office described above an Asst. Manager called me to the managers' office and informed me that he was asked to discipline me for alleged absences by Gladue. Regardless, that I had secured prior management's approval for the alleged absences.

58. That in particular on June 8, 2008 I overheard Macumber inform another assistant manager that Gladue had directed that they seek the slightest excuse to fire me.

59. That I filed a complaint against the defendants at the San Diego Superior Court on June 19, 2009 and the within named parties were duly served with notices of the suit on June 20, 2009. On getting to work on June 25, 2009,, I was escorted by Peppard and Halper into the managers' office Gladue later joined them. They without my consent locked and detained me at the managers' office for about three hours and subjected me to continuous interrogation, threats, harassment, psychological torture and unbearably pressured me to confess to a crime and acknowledge same by signing a document, to that effect, authored by Peppard.

60.     That Gladue continues to instigate[2] associates against me and I am reliably informed that he had instructed associates to keep "an eye on me".

61.     xii. <u>MICHAEL MACUMBER</u>

62.     That on June 1, 2008 Macumber without reasonable cause and excuse subjected me to unwelcomed and unwarranted surveillance in the store. The same day he called me into the managers' office and leveled spurious and unfounded allegations against me.

63.     That on June 8, 2008 I overheard Macumber inform another assistant manager that Gladue had asked that they seek the slightest excuse to fire me.

64.     That few days later I discovered that an associate was monitoring my movement within the store and I complained of the unwelcomed conduct to Macumber and requested for an open door session. However, Macumber denied my request.

65.     That in April 2009, I discovered that a cash register was open and un-attended. I immediately notified Macumber. Few minutes later Macumber came back to me and suggested that he suspected that I had something to do with the open and un-attended cash register and its content. Furthermore, Macumber's unwelcomed harassments resurfaced on June 5, 2009. On that day while I was at lunch Macumber forbade a co-hardware associate from doing a task that he was able and willing to do. He insisted that I must do the task whenever I returned from lunch.

66.     xiii. <u>CHARLES HALPER</u>

67.     That on March 14, 2009 Halper menacingly stormed the hardware department where I was helping customers. He, to my shock and disbelief, called me derogatory racial name. Thereafter, he severally threatened me, summoned Pugh to the hardware department and insisted that they must escort me to the managers' office.

68.     That been dissatisfied with, the way and manner I was treated on March 14, 2009 the consequential discipline of March 15, 2009 I had in a letter dated 03/17/2009 alerted the district market(ing) manager of the treatment I was subjected to by Halper and urged for a reversal of the adverse action against me.

---

[2] Two, of several acts of instigation are illustrative. The first occurred in or around October 2008, at the Claims Dept. I overheard Gladue instruct another asst. manager against me. Secondly, in or around January 2009 Gladue who knew that I was not supposed to operate a register directed a manager to order me to a cash register.

69.    That few days after I sent my letter to the district market(ing) manager, I was informed by co-workers that some yet to be identified youths came to the hardware department and informed associates that there was going to be a shooting at the store. The timeline between Halper's threat, my letter to upper management and the threat of an impending shooting at the store continues to worry and frighten me.

70.    That on July 4, 2009 Halper and Pugh again stormed the hardware department summoned me and alleged that a customer that I had earlier helped complained to them that I had been rude to her. I responded that I was sure that the customer did not tell them that. They again escorted me to the managers' office and continued with the interrogation. Later, that night I reported the incident to William Moore (Asst. Manager) requested an 'open door' and an investigation of the incident.

71.    xiv.  PUGH VENSON

72.    That Pugh monitors my movement from the time I clock in for work to the time I clock out[3].

73.    That beginning from March 14, 2009 up to the time that this law suit was filed and continuing thereafter I have without reasonable cause been subjected to at least five unwelcomed escort by the Gladue-led Poway management.

74.    That the unwelcomed harassing conducts became severe and pervasive after my letters to the district market(ing) manager, wherein I alerted him to the discriminatory practices at the Poway Wal-Mart store. As a result of the severity and pervasiveness of the unwelcomed harassment by the within named persons alleged in each and every foregoing paragraphs I have suffered harm

75.    That I believe that I am being subjected to the above stated unwelcomed harassments by the named defendants because of my race, national origin or color. And a reasonable person in my position would consider the work environment as hostile and abusive.

/////

---

[3]. He monitors when I go on break and lunch and constantly would come into the Break room while I am on break and lunch. On June 5, 2009 he monitored me clock in back from lunch.

76.  **2.**    <u>FAILURE TO TAKE REASONABLE STEPS TO PREVENT</u>
<u>DISCRIMINATION, HARASSMENT AND RETALIATION</u>

77.    xv.  <u>WAL-MART</u>

78.    Plaintiff hereby incorporates by reference paragraphs 1 through 75 above inclusive as though fully set forth herein.

79.    That Wal-Mart through its agents, past and present members of management, inclusive of the within named defendants at different times and under different circumstances discriminated, retaliated and harassed me because of my race, color, sex, or national origin.

80.    That Wal-Mart through its agents, past and present members of management, inclusive of the within named defendants at different times and under different circumstances had taken retaliatory actions against me because of my race, color, sex, or national origin.

81.    That as a result of the discriminatory, harassing and retaliatory actions and conducts of the within named defendants plaintiff has suffered harm.

82.    That Wal-Mart, through its agents, herein named defendants, are fully aware of the facts herein alleged. But have failed to take every necessary reasonable steps to prevent discrimination, retaliation and harassment at its Poway store.

83.    That plaintiff had on several occasions complained to management of discriminatory actions and conducts against him. Significantly, plaintiff had in a letter[4] dated 03/17/2009 alerted the district market(ing) manager of such discriminatory actions and conducts at the Poway Wal-Mart store.

84.    That Wal-Mart's failure to take steps necessary to prevent harassment, discriminatory and retaliatory actions and conducts at its Poway store are substantially the reasons for the harm that plaintiff has suffered.

/////

---

[4]. Copies of which were mailed to Wal-Mart's regional vice president, general counsel and Gladue. Plaintiff followed up with a reminder letter dated 04/11/2009 to the area district market(ing) manager regarding same matter. I received neither an acknowledgement, response nor were any corrective measures taken.

85. **3. CAUSES OF ACTION UNDER TITLE 42 SECTION 1981**

86. xvi. <u>WAL-MART</u>

87. Plaintiff hereby incorporates paragraphs 1 through 88 above inclusive as though fully set forth herein.

88. That under the terms of my employment with Wal-Mart its policies and oral representation by its agents the within named defendants inclusive, there was an implied understanding that an associate shall not be treated differently solely by reason of his race, national origin or color.

89. That Wal-Mart through its within named agents breached the terms by treating me differently compared to its treatment of similarly situated associates in terms, compensation and condition of employment. I believe was treated differently because of my race or national origin.

90. **4. BREACH OF CONTRACT**

91. xvii. <u>WAL-MART</u>

92. That implied in the terms of my employment with Wal-Mart, its policies and by oral representations by its agents was that I shall only be disciplined for cause. That Wal-Mart through its agents breached this terms each time it agents disciplined me under discriminatory circumstances.

93. **5. FALSE IMPRISONMENT**

94. xviii. <u>KIMBERLY PEPPARD</u>

95. On June 25, 2009, on getting to work, I was escorted by Peppard and Halper into the managers' office. Arthur Gladue Jr. (hereafter, "Gladue") (Store Manager) the 2nd defendant in this law suit and agent of Wal-Mart later joined them. They without my consent locked and detained me at the managers' office for about three hours and subjected me to continuous interrogation, threats, harassment, psychological torture and unbearably pressured me to confess to a crime and acknowledge same by signing a document, to that effect, authored by Peppard.

96. xvii. <u>ARTHUR GLADUE JR.</u>

97. On June 25, 2009, on getting to work, I was escorted by Peppard and Halper into the managers' office. Arthur Gladue Jr. (hereafter, "Gladue") (Store Manager) the 2nd defendant in this law suit and agent of Wal-Mart later joined them. They without my consent locked and detained me at the managers' office for about three hours and subjected me to continuous

Employment

- 11

interrogation, threats, harassment, psychological tortured and unbearably pressured me to confess to a crime and acknowledge same by signing a document, to that effect, authored by Peppard.

98.   xviii.  <u>CHARLES HALPER</u>

99.   On June 25, 2009, on getting to work, I was escorted by Peppard and Halper into the managers' office. Arthur Gladue Jr. (hereafter, "Gladue") (Store Manager) the 2nd defendant in this law suit and agent of Wal-Mart later joined them. They without my consent locked and detained me at the managers' office for about three hours and subjected me to continuous interrogation, threats, harassment, psychological torture and unbearably pressured me to confess to a crime and acknowledge same by signing a document, to that effect, authored by Peppard.

100.   Plaintiff hereby incorporates by reference paragraphs 98 through 103 above inclusive as though fully set forth herein and that upon my release I became ill and on the advice of a medical doctor I was placed off work for several days.

101.   I believe that the above stated actions and conducts of Peppard, Halper and Gladue's against me was the reason for the harm I suffered.

102.   **6.   <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**

103.      That plaintiff herein incorporates by reference paragraphs 1 through 84 above inclusive as though fully set forth herein.

104.   That as a result of the outrageous and oppressive action(s) or conduct(s) of the within named defendants alleged in each and every paragraphs incorporated by reference plaintiffs now suffers severe emotional distress.

105.   That defendants discriminatory, retaliatory and harassing actions and conducts against plaintiff was with reckless disregard to the safety, health and well-being of, and the probability that its actions would cause emotional distress to, plaintiff.

106.   That defendants actions and conducts against plaintiff alleged in paragraphs 1 through 84 above are the causes of the severe emotional distress plaintiff now suffers.

/////

107.      **7.  <u>RELIEFS</u>:**

108.      Wherefore plaintiff seeks declaratory reliefs, injunctive reliefs, compensatory and punitive damages against defendants. And such other and further reliefs as the court may deem just and proper in the circumstances.

Dated this February 10, 2010

Paterson Ubarieke

Plaintiff

Employment

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

PATERSON UBARIEKE

## DEFENDANTS

WAL-MART STORES INC., ET AL

FILED

**(b)** County of Residence of First Listed Plaintiff   SAN DIEGO

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   BENTONVILLE

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

'10 CV 0329   W   NLS

CLERK US DISTRICT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act |  | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **PERSONAL INJURY** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 362 Personal Injury - Med. Malpractice | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 365 Personal Injury - Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | **PERSONAL PROPERTY** |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 370 Other Fraud |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 371 Truth in Lending |  |  | ☐ 950 Constitutionality of State Statutes |
| **CIVIL RIGHTS** | ☐ 380 Other Personal Property Damage | **IMMIGRATION** |  |  |
| ☐ 441 Voting | ☐ 385 Property Damage Product Liability | ☐ 462 Naturalization Application |  |  |
| ☒ 442 Employment | **PRISONER PETITIONS** | ☐ 463 Habeas Corpus - Alien Detainee |  |  |
| ☐ 443 Housing/ Accommodations | ☐ 510 Motions to Vacate Sentence | ☐ 465 Other Immigration Actions |  |  |
| ☐ 444 Welfare | **Habeas Corpus:** |  |  |  |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General |  |  |  |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty |  |  |  |
| ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other |  |  |  |
|  | ☐ 550 Civil Rights |  |  |  |
|  | ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN    (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964     28:1985 jm

Brief description of cause:
EMPLOYMENT DISCRIMINATION E.T.C.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
02/09/2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____